# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### SOUTHERN DIVISION
#### 7:18-CR-00094-D-2

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) MEMORANDUM IN SUPPORT OF |
| | ) DEFENDANT'S PRO SE MOTION |
| TEREK HARPER, | ) FOR COMPASSIONATE RELEASE |
| Defendant | ) |

Mr. Terek Harper, by and through undersigned counsel, respectfully moves this Honorable Court to grant his Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) (2018) based on "extraordinary and compelling reasons" which shall be further discussed herein. First, given its importance with respect to the potential of facing medical complications is Mr. Harper's obesity. His obesity greatly enhances his immediate vulnerability to death or serious complications from COVID-19. Additionally, he is the only available caregiver for his greatly infirmed mother, and he needs to resume his role as the primary caregiver for his daughter, which pronouncedly enhance his extraordinary and compelling reasons for compassionate release as well. *See* **Exhibit A**, Medical Records (2020) at 3 (BMI of 33); *see* **Exhibit B** Pro Se Motion for Compassionate Release at 10 ("I have no family members who would be able to attend to my Mother, or anyone who could provide caregiving assistance to my sick mother.") and at 3 ("Until petitioner's. incarceration petitioner was the primary care giver to his daughter who lived with petitioner. Tanaijah's mother has been struggling to raise her arid is currently suffering from medical

conditions that make her unable to properly care for Tanaijah"). Moreover, Mr. harper's daughter Tanaijah, and her mother, both suffer from asthma, placing them both at high risk for severe complications from COVID-19. *See* **Exhibit C** Daughter's Medical Records; **Exhibit B** Pro Se Motion at 3; *see also Centers for Disease Control and Prevention, People Who Need To Take Extra Precautions*, https: / https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last visited March 18, 2021). Mr. Harper's assistance is therefore needed as soon as possible to ensure his daughter's situation does not get any worse; either by her mother being further hampered in her caregiving abilities by COVID-19, or Tanaijah herself contracting COVID-19. As verified herein and also attached to said Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Mr. Harper has properly exhausted his administrative remedies by filing a release request with the warden which was denied on December, 16, 2020. *See* **Exhibit D**: Request for Administrative Remedy.

Mr. Harper is thirty-six (36) years old and suffers from obesity with a BMI of 33 as of January, 2021. *See* **Exhibit A** Medical Records at 38 (BMI of 33 as of 2019); see **Exhibit D** Request for Administrative Remedy (BMI of 33 as of January 2021). According to the Institute for Respiratory Health, "by far and away, the most common illnesses linked to the development of serious disease in COVID-19 patients across [Great Britain, China, and the USA] have been diabetes, high blood pressure, and *obesity*. *See* COVID-19 and People with Pre-Existing Lung Conditions: (https://www.resphealth.org.au/coronavirus/covid-19-and-people-with-pre-existing-

lung-conditions/) (last accessed March 16, 2021) (emphasis added). Mr. Harper has also already once contracted COVID-19 while in the custody of the BOP. *See* **Exhibit A:** Medical Records at 28-29. Mr. Harper tested positive for COVID-19 on December 20, 2020. *See* **Exhibit A** at 28-29. Despite having recovered from the virus, Mr. Harper's elevated risk for severe illness from COVID-19 remains the same or worse than before. *Reinfection With COVID-19*, CDC (Oct. 27 2020), https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html. As the Maryland district court explained in a recent opinion:

> Because obesity increases one's risk of having a serious case of Covid-19 at any age, the Court agrees with Corey [the petitioner] that his health situation satisfies the "extraordinary and compelling" reasons requirement (internal quotations in original).... Though it is undoubtedly a positive sign that Corey appears to have recovered following his positive Covid-19 test in June, this recovery is not firm evidence that Corey is no longer at a heightened risk of severe illness. as of this writing, it remains unknown both (1) to what degree individuals who recover from Covid-19 benefit from long term immunity to the various strains of the virus, and (2) what sort of future complications an individual like Corey might suffer following an apparent recovery. Judge Grimm, Judge Hollander, and Judge Chuang of this District have all found that medical conditions that increase an inmate's susceptibility to severe illness may constitute "extraordinary and compelling reasons," even if the inmate has already contracted and apparently recovered from COVID-19. *See, e.g.*, *United States v. Williams*, Crim. No. PWG-19-134, 2020 WL 3073320 (D. Md. June 10, 2020); *United States v. Kess*, Crim. No. ELH-14-480, 2020 WL 3268093 (D. Md. June 17, 2020); *United States v. Fletcher*, Crim. No. TDC-05-0179-01, 2020 WL 3972142 (D. Md. July 13, 2020).

*United States v. Corey*, 2020 U.S. Dist LEXIS 185635 (D. Md. Oct 6th, 2020), 4. While detained and unable to comply with reasonable social distancing and hygienic COVID-19 precautions recommended by the CDC, Mr. Harper's combination of being

3

obese and having already had COVID-19 place him at higher risk of death or hazardous complications if he were to contract COVID-19 a second time.

Mr. Harper is in custody at Fort Dix FCI where the detained population is around 2,747 total inmates, according to the Federal Bureau of Prisons. *COVID-19 Coronavirus* https://www.bop.gov/locations/institutions/ftd/ (last accessed March 18, 2021). Fort Dix FCI is infamous for being host to the largest outbreak of COVID-19 of any federal correctional facility in the country. *New Jersey Lawmakers Urge Federal Action on COVID-19 Outbreak at FCI Fort Dix,* https://www.radio.com/kywnewsradio/news/local/new-jersey-lawmakers-urge-action-on-covid-19-at-fci-fort-dix (indicating both democratic and republican senators wanted the Department of Justice to look into the latest outbreak at FCI Fort Dix, which they said is the worst of any federal correctional facility) (last accessed March 18, 2021). As of this writing, 1829 inmates have had or currently have COVID-19, or roughly 65% of the inmate population. 87 staff members have also contracted COVID-19. *COVID-19 Coronavirus*, BOP, https://www.bop.gov/coronavirus/ (last accessed March 18, 2021). One inmate at Fort Dix FCI, Myron Crosby, has already died from COVID-19. *Fort Dix, With Most Covid Cases Among Prisons, Sees First Death*, https://patch.com/new-jersey/cinnaminson/fort-dix-most-covid-cases-among-prisons-sees-1st-death (last accessed March 18, 2021); *see also* BOP, https://www.bop.gov/coronavirus/ (last accessed March 18, 2021). In fact, Mr. Crosby shared a room with Mr. Harper before Mr. Crosby was transferred to the hospital. *See* **Exhibit E** Message from Mr. Harper.

4

Likely due to his poor handling of the pandemic, the warden at Fort Dix was reassigned in late January. *Warden at NJ Federal Prison Reassigned Amid Massive Covid Outbreak*, https://www.nj.com/news/2021/02/warden-at-nj-federal-prison-reassigned-amid-massive-covid-outbreak.html (last accessed March 18, 2021). In sum, Fort Dix has failed to manage its facility in a way that prioritizes the safety and health of its inmates and staff.

So long as Mr. Harper is detained at Fort Dix, he will face a high probability for contracting COVID-19 a second time, and as noted above, his obesity is "far and away, one of the most common illnesses linked to serious illness and COVID-19." *COVID-19 and People with Pre-Existing Lung Conditions*, https://www.resphealth.org.au/coronavirus/covid-19-and-people-with-pre-existing-lung-conditions/ (last accessed March 16, 2021) (emphasis added). Importantly, a Southern District of Mississippi court granted a motion for compassionate release to an inmate healthier than Mr. Harper when faced with prison conditions arguably far better than those at Fort Dix. At the time the opinion was written, while seven (7) inmates had died, only thirty-three (33) inmates, or slightly less than 4% of the inmate population, had tested positive for COVID-19. *See United States v. Kelly*, No. 3:13-CR-59-CWR-LRA-2, 2020 WL 2104241, at 10-11 (S.D. Miss. May 1, 2020) (granting compassionate release to young man without health issues at Oakdale I because "it has become increasingly apparent that the BOP has failed to control the outbreak at Oakdale I. … Given the steadily growing death toll and the apparent continued spread of the disease at Oakdale I, COVID-19 creates an 'extraordinary

and compelling reason' potentially warranting a reduced sentence."). This type of punishment, consisting of him having to be detained during these exceptionally harsh and unusual times, does not fit the crime anymore; in other words, it is certainly greater than necessary. *See* 18 USC § 3553(a) (2018).

According to a National Commission on COVID-19 and Criminal Justice report released September 2020 on the impact of COVID-19 in U.S. State and Federal Prisons, the COVID-19 mortality rate within prisons is twice as high as the general population's morality rate and the rate of COVID-19 infections is over four times as high as the general population. *See* Kevin T. Schnepel, *COVID-19 in U.S. State and Federal Prisons* Washington at 3, D.C.: Council on Criminal Justice (September 2020) (accessible at https://cdn.ymaws.com/counciloncj.org/resource/resmgr/covid_commission/FINAL_S chnepel_Design.pdf).

New outbreaks, and now new strains, of COVID-19 have occurred in recent months, which is particularly concerning when the United States has the largest incarcerated population in the world at about two million detainees. *See* Wendy Sawyer & Peter Wagner, *Mass Incarceration: The Whole Pie 2020* (Mar. 24, 2020), https://www.prisonpolicy.org/reports/pie2020.html. Just this month, the new strain Covid B1.1.7 was detected in Mercer County, just one county over from FCI Fort Dix. *See First Confirmed Case of Covid-19 Variant Reported in Mercer County,* https://planetprinceton.com/2021/02/07/first-confirmed-case-of-covid-19-variant-

reported-in-mercer-county-identified-in-trenton-resident/ (last accessed March 18, 2021).

The mortality rate for Black Americans with COVID-19 is twice that of white Americans and Black Americans are incarcerated five times more often than white Americans. Schnepel, *supra*, at 5. A key finding from the report was that the highest COVID-19 mortality rates were observed "within large prisons…" *Id.* at 3. Mr. Harper is African American, suffers from obesity, and is detained at FCI Fort Dix, which has an inmate population of 2,747. BOP, https://www.bop.gov/locations/institutions/ftd/ (last accessed March 18, 2021). FCI Fort Dix is a large prison already having to provide extensive medical care to many inmates with COVID-19. Therefore, considering all factors in this case, Mr. Harper is at a very high risk of COVID-19 complications or mortality, presenting "extraordinary and compelling" reasons for compassionate release.

As most judges from the Eastern District of North Carolina have granted such Compassionate Release Requests where it is appropriate to apply this type of legally sanctioned mercy, it is respectfully requested that this Honorable Court also issue an order reducing Mr. Harper's sentence to time served and/or home confinement since he, too, should reap the appropriate benefit of compassionate release as well.

## STATEMENT OF FACTS

On May 8, 2018, Terek Harper, along with two co-defendants, was named in a four-count indictment filed in the Eastern District of North Carolina. [D.E. 1]. Counts one and four of the indictment applied to Mr. Harper. [D.E. 1]. Count one (1) charged

7

Mr. Harper with conspiracy to distribute and possess with intent to distribute one hundred (100) grams or more of heroin in violation of 21 U.S.C. § 841(a)(1). [D.E. 1]. Count four (4) charged Mr. Harper with possession with intent to distribute a quantity of heroin in violation of 21 U.S.C. § 841(a)(1). [D.E 1]. On September 7, 2018, Mr. Harper pled guilty to counts one and four. [D.E. 86]. On April 1, 2019, District Court Judge, The Honorable James C. Dever III, of this Honorable Court, sentenced Mr. Harper to 87 months' imprisonment on counts one and four each, to run concurrently, to be followed by three years on count one and five years on count four of supervised release, to run concurrently. [D.E. 159]. Mr. Harper' projected release date is July 7, 2024. https://www.bop.gov/inmateloc/.

18 U.S.C. 3582 (c)(1)(A) (2018) provides that a defendant may submit a motion for compassionate release directly to the court "after the defendant has fully exhausted all administrative rights to appeal . . . *or a lapse of 30 days from the receipt of such a request by the warden of the defendant's facility*, whichever is earlier . . . ." (emphasis added). Prompted by the dire situation caused by the COVID-19 pandemic, Mr. Harper filed a request for administrative remedy on December 10, 2020 that was denied on December 16, 2020. *See* **Exhibit D**: Request for Administrative Remedy.

The current COVID-19 outbreak has not been contained in the United States and certainly and sadly not within our prison walls either. Accordingly, it is respectfully submitted that it is appropriate under these urgent circumstances in the case sub judice for this Honorable Court not to strictly construe the administrative exhaustion requirement as required by 18 U.S.C. § 3582(c)(1)(A) and as such, find

that Mr. Harper has in fact exhausted his administrative remedies. *See Haines v. Kerner*, 404 U.S 519, 520 (1972).

## BACKGROUND

Congress first enacted 18 U.S.C. § 3582(c)(1) as part of the Comprehensive Crime Control Act of 1984 to serve as a "safety valve" for judges to assess whether a sentence reduction was warranted by factors that previously would have been addressed through the abolished parole system. S. Rep. No. 98-225, at 121 (1983). "This legislative history demonstrates that Congress, in passing the Comprehensive Crime Control Act of 1984, intended to give district courts an equitable power to employ on an individualized basis to correct sentences when 'extraordinary and compelling reasons' indicate that the sentence initially imposed on an individual no longer served legislative objectives." *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at 5 (S.D.N.Y. Apr. 6, 2020).

The compassionate release statute empowered courts to reduce a defendant's sentence whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Congress delegated to the U.S. Sentencing Commission the responsibility of defining what were "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t) (2006) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). It was not until 2007, more than two decades after the statute was enacted, that the Commission responded. It issued a guideline stating that "extraordinary and compelling reasons" include

medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, app. n.1(A)-(D) (2018).

Mr. Harper is unfortunately vulnerable to an increased risk of serious illness if he were to contract COVID-19 again. *See People with Certain Medical Conditions*, CDC (Feb. 3, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/people-with-medical-conditions.html; *see also United States v. Corey*, 2020 U.S. Dist LEXIS 185635 (D. Md.) at 4 (quoted at length at supra, 3). Due to the combination of risk factors, proven through statistics and medical reports, Mr. Harper's request for compassionate release qualifies under the guidelines as "extraordinary and compelling" reasons requirement. Application Note 1(A)(ii) to Guidelines Section 1B1.13 states extraordinary and compelling reasons, which include when the defendant is—

(I)     suffering from a serious physical or medical condition;
(II)    suffering from a serious functional or cognitive impairment; or
(III)   experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 app. n.1(A)(ii). Application Note 1(B) identifies extraordinary and compelling reasons to include Mr. Harper's "suffering from a serious physical or medical condition." § 1B1.13 app. n.1(B). Furthermore, Application Note 1(D) created a catch-all provision, for when the Director of the BOP determines "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13 app. n.1(D).

As originally enacted, the statute left sole discretion for filing compassionate release motions with the Director of the BOP, who adopted a program statement governing compassionate release that in many ways narrowed the criteria established by the Commission. *See* BOP Program Statement 5050.49 (2013). During the span of more than three decades, the BOP rarely filed motions on behalf of inmates who met the eligibility criteria. The Office of the Inspector General for the Department of Justice concluded in 2013 that "[t]he BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." Department of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program*, 11 (2013) (accessible at https://oig.justice.gov/reports/2013/e1306.pdf; *see also* Department of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons*, 51 (2016) ("Although the BOP has revised its compassionate release policy to expand consideration for early release to aging inmates, which could help mitigate the effects of a growing aging inmate population...", decades of denying such Compassionate Release Reduction Requests are imprinted in its long standing history) (accessible at https://oig.justice.gov/reports/2015/e1505.pdf); U.S.S.G. § 1B1.13 app. n.4 (admonishing BOP for its past failure to pursue relief on behalf of eligible inmates). Heeding this criticism, Congress acted.

The title of Section 603(b) of the First Step Act—"Increasing the Use and Transparency of Compassionate Release"—leaves no doubt as to Congress' intent in

11

modifying 18 U.S.C. § 3582(c)(1)(A). Through the First Step Act, enacted December 21, 2018, Congress sought to resuscitate compassionate release by, *inter alia*, allowing defendants to directly petition courts for relief, rather than leaving that power solely in the hands of the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). "[U]nder the amended statute, a court may conduct such a review also 'upon motion of the defendant,' if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed 'from the receipt of such a request by the warden of the defendant's facility,' whichever is earlier." *United States v. Decator*, No. CCB-95-0202, 2020 WL 1676219 (D. Md. Apr. 6, 2020) (*quoting* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239), *appealed by the government*. In other words, "a prisoner must exhaust the administrative appeal process, or wait 30 days, before his claim may be considered" by the court. *United States v. Underwood*, No. TDC-18-0201, 2020 WL 1820092, at 2 (D. Md. Apr. 10, 2020) (citing cases).

## ARGUMENT

Mr. Harper's underlying medical conditions make him especially vulnerable to COVID-19, his infirmed mother's care during the pandemic is of utmost importance, and he remains the most capable caregiver for his daughter. These factors qualify as "extraordinary and compelling reasons" for relief. In considering the § 3553(a) sentencing factors, Mr. Harper's case warrants compassionate release: he would not pose a risk to the community upon his release, he faces elevated risks posed by COVID-19, he needs to care for his sick mother, and he needs to care for his asthmatic

daughter in the midst of a pandemic that puts her at an elevated risk of severe illness. *See Centers for Disease Control and Prevention, People Who Need To Take Extra Precautions*, https: / https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last visited March 18, 2021).

## A. This Honorable Court has the authority to determine that Mr. Harper's vulnerability to COVID-19 does in fact constitute an "Extraordinary and Compelling Reason" for a sentence reduction.

Many federal judges across the country are holding that they have the authority to define "extraordinary and compelling reasons" for release under § 1B1.13 app. n. 1(D) and that the risks associated with COVID-19 can constitute an "extraordinary and compelling reason" for a sentence reduction. *United States v. Brooker (Zullo)*, No. 19-3218, 2020 WL 5739712 (2d Cir. Sept. 25, 2020). Courts have used their wise and appropriate discretion to provide defendants with relief under § 3582(c)(1)(A) "even when their circumstances do not fit squarely within the current policy statement of the Sentencing Commission as reflected in U.S.S.G. §1B1.13." *United States v. Alexander Salabrarria*, Crim. No. 7:00-CR-95-1-BO, ECF No. 125, page 5 (E.D.N.C. April 14, 2020), *citing United States v. Mauma*, No. 2:08-CR-00758TC-11, 2020 WL 806121, at 4 (D. Utah Feb. 18, 2020) (listing cases holding same). "Thus, while an applicable policy statement 'provides helpful guidance, it does not constrain the Court's independent assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction." *United States v. Norris*, F. Supp. 3d 383, 386 (E.D.N.C. 2020) (*quoting United States v. Beck*, 425 F. Supp. 3d 573, 581 – 82 (M.D.N.C. 2019).

In *United States v. Mel*, Judge Chuang held that "[a]s applied to Mel, the COVID-19 pandemic presents 'extraordinary and compelling reasons' that warrant the modest sentencing reduction requested." 2020 WL 2041674, at 2. Ms. Mel had submitted documents establishing that she had a thyroid mass that doctors estimated had a 25- to 40-percent chance of malignancy. While Judge Chuang found he could not "conclude with certainty" that Mel had a health condition that placed her at particular risk to severe illness from COVID-19, he "nevertheless . . . f[ound] that the historic COVID-19 pandemic, the fact that Mel has been incarcerated in one of the federal prisons most profoundly impacted by COVID-19 [FCI Danbury], and the fact that as a result of the outbreak, she has effectively been prevented from receiving necessary medical care for a potentially life threatening condition, collectively establish 'extraordinary and compelling reasons' within the meaning of 18 U.S.C. § 3852(c)(1)(A)." *Id.* at 3. As discussed herein, the case sub judice presents similar factors with respect to Mr. Harper who is currently being incarcerated at FCI Fort Dix wherein there are positive COVID-19 cases, and he is currently at high risk given his medical ailments. Consequently, much like Mel, Mr. Harper presents a series of factors which "collectively establish 'extraordinary and compelling reasons' within the meaning of 18 U.S.C. § 3852(c)(1)(A)." *Id.* at 3. Here, as mentioned, his obesity places him at especially high risk for severe COVID-19 complications. *See* https://www.resphealth.org.au/coronavirus/covid-19-and-people-with-pre-existing-lung-conditions/ (last accessed March 16, 2021).

Judges in districts throughout the United States have recognized that, at least for certain defendants, COVID-19 presents "extraordinary and compelling reasons"

14

warranting a reduction in their sentences under the compassionate release statute. Some of these cases are cited below to identify the range of which Federal Courts across the country are granting such Compassionate Release Requests. These cases include, but are not limited to:

- *United States v. Norris*, F. Supp. 3d 383 (E.D.N.C. 2020) (finding defendant had demonstrated extraordinary and compelling circumstances for relief because he "suffers from various severe ailments," including a life-threatening disease, kidney failure requiring dialysis three times a week, and recurrent bouts of pneumonia, "that cumulatively make his continued confinement especially dangerous in light of COVID-19.");

- *United States v. Howard*, No. 4:15-cr-00018-BR, 2020 WL 2200855 (E.D.N.C. May 6, 2020) (finding 52-year-old with "chronic obstructive pulmonary disease ('COPD'), Type II diabetes, obesity, Stage 3 kidney disease, edema, open wounds on his legs, and a diaphragmatic hernia" demonstrated extraordinary and compelling circumstances due to COVID-19 even though his conditions neither constituted terminal illness nor prevented him from engaging in most of his daily activities without assistance);

- *United States v. Amarrah*, 458 F. Supp. 3d 611 (E.D. Mich. 2020) (shortening 60-month sentence after only 21 months because Amarrah's "Type II diabetes, hypertensive heart disease, cardiac arrhythmia, obstructive sleep apnea, and asthma" put him a substantial risk should he contract COVID-19 even though facility had no reported cases);

- *United States v. Quintero*, 458 F. Supp. 3d 130 (W.D.N.Y. 2020) (granting compassionate release to man who "suffers from diabetes, a compromised immune system, obesity, and hypertension," "which make him more susceptible than another to contract the virus.");

There is no question that Section 603(b) of the First Step Act fundamentally changed the role of courts in the compassionate release process, vesting them with the authority to determine what constitutes extraordinary and compelling reasons for release. This frightening pandemic, as it affects Mr. Harper with his obesity and higher risk for severe illness or death after contracting COVID-19, is an

15

extraordinary and compelling circumstance.

**B. Mr. Harper' Compromised Health Situation Presents an "Extraordinary and Compelling" Reason Warranting a Reduction in Sentence.**

The Centers for Disease Control (CDC) have identified several factors that put individuals at higher risk for severe illness. "People of any age with certain underlying medical conditions are at increased risk for severe illness from COVID-19." *People with Certain Medical Conditions*, CDC (Feb 3, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-withmedical-conditions.html (listing overweight, high blood pressure/hypertension, and liver disease as factors that might increase the risk of severe illness).

While the Bureau of Prisons has made efforts to reduce the spread of the virus throughout the federal prison system, the close quarters and communal nature of life in prison creates a real and constant threat to the health and safety of the prisoners who are forced to remain in an environment conducive to the spread of highly communicable disease. COVID-19 does not consider the ability of individuals to save themselves from its path. While the public at large is encouraged to stay home and isolate from others, prisoners are forced to live in highly populated close quarters. Amid this rapidly-unfolding crisis, the recommended antidote is simple: reduce the prison population by releasing those whose continued incarceration is not necessary to protect the public so that correctional institutions can better protect those who

need to stay incarcerated.[1]  Again, Mr. Harper's obesity causes him to have a higher risk of serious illness from COVID19. As the cases discussed above in Part A suggest, the global COVID-19 pandemic created a dangerous situation unanticipated by the courts when handing down sentences pre-pandemic; a situation that makes continuing long sentences for rehabilitated, non-violent offenders with major health risks overly precarious and unreasonable.

Mr. Harper is exactly the type of individual deserving of compassionate release: he is at increased risk of severe illness and, as will be discussed below in Part D, his release does not pose a danger to the community and balancing the 3553(a) factors warrants the requested relief.

### C. Mr. Harper' Need to Care for His Daughter and His Infirmed Mother During the COVID19 Pandemic Present an "Extraordinary and Compelling" Reason Warranting a Reduction in Sentence.

In addition to the "extraordinary and compelling" reasons for a reduction in Mr. Harper' sentence based on his impaired health and the threat of complications caused by COVID-19, Mr. Harper desires to be able to care and provide for his daughter and his infirmed mother during the pandemic.

---

[1] For example, on March 27, 2020, more than 400 former DOJ leaders, attorneys, and federal judges sent an open letter to the President, asking that he take immediate action to reduce the population in correctional facilities to prevent the catastrophic spread of COVID-19, in particular by commuting the sentences of elderly and medically vulnerable inmates who have already served a majority of their sentence. *See https://fairandjustprosecution.org/wpcontent/uploads/2020/03/Letter-to-Trump-from-DOJ-and-Judges-FINAL.pdf*.  The same day, dozens of public health experts made a similar request, asking the President to commute the sentences of elderly inmates, noting they are at the highest risk of dying from the disease and pose the smallest risks to public safety. *See https://thejusticecollaborative.com/wpcontent/uploads/2020/03/Public-Health-Expert-Letter-to-Trump.pdf*.

§ 1B1.13, app. n.1(C) of the Commission guidelines delineate particular "family circumstances" that the Commission considers to be "extraordinary and compelling" circumstance for early release. Although the family circumstances for which Mr. Harper is seeking compassionate release – care for one's child when there is a living caregiver, or care for one's infirmed parent – are not explicitly enumerated in this section, § 1B1.13, application note 1 (D) of the Commission guidelines provide a catchall "extraordinary and compelling" reason provision. It states that "extraordinary and compelling" reasons can be found if the Director of the Bureau of Prisons finds that there is "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." While this provision gives authority to the Director of the BOP, this specified authority has been recognized by courts as null after the passage of the First Step Act:

> [a]lthough prior to the enactment of the First Step Act of 2018 only the Director of BOP could determine whether "other" extraordinary and compelling reason existed for compassionate release, the overwhelming majority of courts analyzing motions for compassionate release after the enactment of the First Step Act of 2018 find that courts can now determine whether "other" extraordinary and compelling reasons warrant compassionate release under U.S.S.G. § 1B1.13 n.1(D).

*United States v. Israel*, No. 95-00314-CR, 2020 WL 3893987 at 2 n.2 (S.D. Fla. July 10, 2020). "Therefore, the most sensible interpretation of the Sentencing Commission's guidance in light of Congress's recent statutory amendments [the First Step Act] is that 'the Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive.'" *United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019).

Because of this discretionary power, recently courts have found that taking care of one's parent is, when the petitioner appears to be the parents only potential caregiver, an "extraordinary and compelling reason for compassionate release." *See United States v. Bucci*, 409 F. Supp. 3d at 2 (D. Mass) (citations omitted). (finding that the defendant's need to take care of his mother was, in his case, an "extraordinary and compelling reason" for compassionate release). In a recent opinion from the Southern District of New York, the court explained the expanding standard for family circumstances that merit compassionate release:

> The animating principle of the Family Circumstances category is that there exists an extraordinary and compelling reason for release when the defendant has a close family member who is completely unable to care for himself or herself and for when the defendant would be the only available care giver… This Court sees no reason to discount this unique role simply because the incapacitated family member is a parent and not a spouse.

*United States v. Lisi*, 440 F.Supp 3d 246, 252 (SDNY 2020) (citations omitted). Moreover, because Mr. Harper's daughter Tanaijah and her current caregiver, her mother, both suffer from asthma, their shared elevated risk for serious complications from COVID put Tanaijah's current caregiving arrangement in extreme jeopardy. According to the CDC, "people with moderate to severe asthma may be at higher risk of getting very sick from COVID-19. Covid-19 can affect [their] respiratory tract (nose, throat, lungs), cause an asthma attack, and possibly lead to pneumonia and acute respiratory disease. *See Centers for Disease Control and Prevention, People Who Need To Take Extra Precautions*, https: / https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last visited March 18, 2021). District courts have

echoed these concerns in recent opinions. In *United States v. Kellam*, a case out of the middle district of Pennsylvania, the court stated "asthma specifically inflicts weakness on the sufferer's lungs, raising significant concerns about how covid might affect them. It would be beyond this court's level of expertise to say a certain severity of asthma is necessary before finding an extraordinary and compelling event." *United States v. Kellam* 2020 U.S. Dist. LEXIS 141373 (M.D. Pa., Aug., 7, 2020), at 4; *see also United States v. Norris*, 2020 U.S. Dist. LEXIS 70219 (D. Conn. Apr. 16, 2020) ("Health officials have recognized that individuals with chronic respiratory disease are deemed at greater risk of covid-19").

Ultimately, district courts are expanding the family circumstances exception and affirming the serious risk for asthmatics during this horrible pandemic. When this is considered alongside the decisions discussed above in Part A, and the wide discretion given to courts after the passage of the First Step Act, this Court is well within its authority to hold that caring for an infirmed parent or an asthmatic daughter with an asthmatic mother is an extraordinary and compelling reason for relief.

Here, Mr. Harper desires to take care of his daughter because he was once the primary caregiver and his daughter's mother is struggling to provide adequate care for their daughter. *See* **Exhibit B** Pro Se Motion for Compassionate Release at 3. Moreover, he is greatly concerned that his daughter or his daughter's mother will experience serious or deadly complications if they contract COVID-19 due to their asthma. *See* **Exhibit B** at 3. Regarding Mr. Harper's mother, Mr. Harper stated in

20

his motion to this court, that "I have no family members who would be able to attend to my Mother, or anyone who could provide caregiving assistance to my sick mother." See **Exhibit B** Pro Se Motion for Compassionate Release at 3.

The dire danger to Mr. Harper's daughter and his mother is a very "extraordinary and compelling" reason for relief in any common understanding of the words. *E.g. United States v. Richardson*, No. 5:18-CR507-LFL, 2020 WL 2200853 at 2 (E.D.N.C. May 6, 2020) ("The statute does not define "extraordinary and compelling reasons" and the United States Court of Appeals for the Fourth Circuit has not previously interpreted this phrase. The court therefore interprets the terms "as taking their ordinary, contemporary, common meaning." (citations omitted)). This "extraordinary and compelling" reason when combined with the "extraordinary and compelling" reason caused by the risks to Mr. Harper' health, when taken into consideration with the § 3553(a) discussed below, warrant the relief provided by the compassionate release statute.

**D. The Relevant § 3553(a) Sentencing Factors Warrant Reducing Mr. Harper' Sentence to Time Served / Adding a Period of Home Confinement as a Condition of Supervised Release.**

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. § 3553(a) to determine whether a sentencing reduction or modification is warranted. 18 U.S.C. § 3582(c)(1)(A)(i) (2018). Here, Mr. Harper' compromised physical health, the unique risk factors associated with COVID-19 and his ailments, his need to care for his ill mother, and to care for his daughter, when combined with the other Section 3553(a) sentencing

factors, warrant immediate relief.

The court shall impose a sentence that is sufficient but "not greater than necessary" to:

(A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D) (2018). "[A]lthough defendant's federal sentence may have been appropriate at the time it was imposed, the Court's analysis is different in current circumstances. *United States v. Lee*, 2020 WL 3422772, at 5 (E.D. Va. June 22, 2020); *United States v. Mel*, 2020 WL 2041674 at 3 (D. Md. Apr. 28, 2020) (finding release appropriate where "the actual severity of the sentence as a result of the COVID-19 outbreak exceeds what the Court anticipated at the time of sentencing.").

Any further detention of Mr. Harper during this time would be to continue a sentence that is greater than necessary, particularly when, due to the pandemic, "prisons now are even more dangerous than we typically accept." *United States v. Brown,* 457 F. Supp. 3d 691, 694 (S.D. Iowa 2020). Moreover, it is important to note that he has suffered enough by already contracting the Coronavirus once in likely one of the worst BOP facilities in the country. This makes his detention during that time serve as an astronomical amount of time when comparing it to when someone is healthy and not having to endure such harsh circumstances that he had to endure. Thus, further demonstrating the strength of how at this time he has served a

"sufficient amount of time" whereas anything more becomes unnecessary when taking into consideration all of the 3553(a) factors.

Since Mr. Harper has been detained, he has worked incessantly towards his rehabilitation. He has stated that he has completed a course in business management and introduction to business. *See* **Exhibit E** Message from Mr. Harper. Submitted with this memorandum is his certificate for completing the course "The Seven Habits of Highly Effective People." *See* **Exhibit F.**

Further deterring any future criminal conduct, Mr. Harper has a clear release plan and will be residing with his girlfriend Ericka Mccrae upon his release. *See* **Exhibit D** Request for Administrative Remedies. Mr. Harper also already has a job lined up with Local Union 55 in New Jersey. See **Exhibit D.**

In order to avoid unreasonably risking serious damage to his health, Mr. Harper should be granted compassionate release. In addition to suffering from obesity and residing in one of the worst federal correctional facilities for COVID-19 in the nation, he has been once already infected with and fallen ill to the COVID-19 virus while in BOP custody. *See* **Exhibit A:** Medical Records at 28-29. Furthermore, Mr. Harper needs the opportunity to care for his infirmed mother still suffering serious effects from her battle with COVID-19, and to care for his daughter who suffers from asthma.

A reduction or modification of Mr. Harper's sentence would not diminish the seriousness of the offense, nor would it place the public in any danger. The extraordinary and compelling circumstances presented by the uncontrolled spread of

COVID-19, compounded by the heightened risks faced by Mr. Harper, his mother, and his daughter, all of whose ability to engage in basic self-protective measures is restricted, warrant relief. Mr. Harper's period of supervised release awaiting him will ensure that he complies with his release plan. *See United States v. Early*, 2020 WL 2112371, at 5 (N.D. Ill. May 4, 2020) (finding that the risk to the public "does not outweigh the risk to [Early] from contracting the coronavirus while incarcerated," particularly where "the Probation Office and the Court will be monitoring him while on supervised release and []the Court will not hesitate to recommit him to prison should he again go astray.") The Court may also impose home confinement for a term equivalent to the remainder of his custodial sentence as well. 18 U.S.C § 3582(C)(1)(A); *See also United States v. Raia*, No. 2:18-CR-657, Dkt. No. 91 (D.N.J., May 7, 2020) (discussing the reasons for and ordering home confinement).

Considering all of these emergency circumstances, this Court could find a combination of supervised release and/or home confinement which would be sufficient to ensure deterrence, protection of the public, and which would allow Mr. Harper to better preserve his health and life and the health of life of his mother.

## CONCLUSION

It is respectfully submitted that Mr. Harper has demonstrated extraordinary and compelling reasons for compassionate release and thus, respectfully requests this Honorable Court to reduce his sentence to time served and/or add a period of home confinement as a condition of supervised release.

24

Respectfully submitted, this the 19th day of March, 2020.

GUIRGUIS LAW, PA

/s/ Nardine Mary Guirguis
Nardine Mary Guirguis
434 Fayetteville St., Suite 2140
Raleigh, North Carolina 27601
Telephone: (919) 832-0500
Facsimile:  (919) 246-9500
nardine@guirguislaw.com

*Designation: CJA Appointed*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was served upon the Assistant

Attorney for the United States electronically at the following address:


TOBIN W. LATHAN
Attorney for the United States
United States Attorney's Office Civil Division
150 Fayetteville St., Suite 2100
Raleigh, NC 27601
Tobin.w.lathan@usdoj.gov


This 19th day of March, 2021.


GUIRGUIS LAW, PA

<u>/s/ Nardine Mary Guirguis</u>
Nardine Mary Guirguis
PANEL Attorney