IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:18-CR-94-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| TEREK HARPER, | ) | |
| | ) | |
| Defendant. | ) | |

On January 20, 2021, Terek Harper ("Harper" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 192]. On March 22, 2021, Harper, through counsel, filed a memorandum and exhibits in support of his motion for compassionate release [D.E. 204, 205]. On April 5, 2021, the government responded in opposition and filed exhibits in support [D.E. 209, 210]. On April 12, 2021, Harper replied [D.E. 213]. As explained below, the court denies Harper's motion.

I.

On September 7, 2018, with a written plea agreement and pursuant to a waiver of indictment, Harper pleaded guilty to conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin (count one) and possession with intent to distribute a quantity of heroin (count two). See [D.E. 1, 84–86]. On April 1, 2019, the court held a sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See [D.E. 159, 161, 162, 169]. After sustaining three of Harper's objections, overruling one of Harper's objections, and overruling the government's objection, the court calculated Harper's total offense level to be 26, his criminal

history category to be II, and his advisory guideline range to be 70 to 87 months' imprisonment. See [D.E. 162] 1, 4; [D.E. 169] 6–65. After thoroughly considering all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Harper to 87 months' imprisonment. See [D.E.161] 2; [D.E. 169] 65–79.

Harper appealed [D.E. 160]. On September 30, 2020, the United States Court of Appeals for the Fourth Circuit enforced the appellate waiver in Harper's plea agreement and dismissed Harper's appeal [D.E. 177, 178]. On December 22, 2020, Harper petitioned the Supreme Court of the United States for a writ of certiorari. See [D.E. 191]. On February 22, 2021, the Supreme Court denied certiorari. See [D.E. 197].

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

   (III) experiencing deteriorating physical or mental health because of the aging process,

   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

3

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, No. 20-7350, 2021 WL 1823289, at *3 (4th Cir. May 7, 2021); United States v. Kibble, No. 20-7009, 2021 WL 1216543, at *3–4 (4th Cir. Apr. 1,

---

> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 2021 WL 1216543, at *3–4. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 2021 WL 1823289, at *3; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

On December 10, 2020, Harper submitted a compassionate release request to the warden, which was denied on December 16, 2020. See [D.E. 192] 9, 14; [D.E. 204] 2, 8–9; [D.E. 204-4]. The government has not invoked section 3582's exhaustion requirement. See United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[2] Accordingly, the court addresses Harper's claim on the merits.

Harper seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Harper cites the COVID-19 pandemic, his bout with and recovery from COVID-19, his race, and his obesity. See [D.E. 192] 2–4, 14–15; [D.E. 204] 1–3, 7, 17; [D.E. 204-5]; [D.E. 205]. Harper

---

[2] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

5

also cites the conditions at FCI Fort Dix, his rehabilitation efforts, his release plan, his family's medical needs, his being the only potential caregiver for his daughter and mother, and that he has served a significant portion of his sentence. See [D.E. 192] 3–9, 14–16; [D.E. 204] 1–2, 4–5, 12–13, 17, 19–21, 23–24; [D.E. 204-3]; [D.E. 204-6].

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Although Harper states that he suffers from obesity, he has not demonstrated that he is not going to recover from this condition or that it cannot be treated while Harper serves his sentence. The same holds true were Harper to contract COVID-19 again. Moreover, Harper has received at least one dose of the Moderna vaccine, and was scheduled to receive his second dose in April 2021. See [D.E. 209] 18; [D.E. 210] 14, 18; cf. [D.E. 213]. Harper argues that the vaccine will not alleviate the COVID-19 pandemic in prison or his medical risks, but his argument lacks merit. Cf. [D.E. 213]. Accordingly, reducing Harper's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the family circumstances policy statement, the policy statement requires "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children." U.S.S.G. § 1B1.13 cmt. n.1(C)(i). Although Harper contends that his daughter's mother is struggling to care for her, he does not state that the mother is incapacitated or unable to care for their daughter. See [D.E. 192] 3–5; [D.E. 204] 1–2, 12–13, 17–21. Moreover, the policy statement does not account for the fact that Harper's mother may require care. Cf. [D.E. 192] 4–5; [D.E. 204] 1, 12, 17–21. Accordingly, reducing Harper's sentence is not consistent with application note 1(C). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the

COVID-19 pandemic, Harper's obesity, Harper's rehabilitation efforts, Harper's family circumstances, and his release plan are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against reducing Harper's sentence. See High, 2021 WL 1823289, at *4–7; Kibble, 2021 WL 1216543, at *4–5; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Harper is 36 years old and engaged in serious criminal conduct from 2015 to 2018. See PSR ¶¶ 14–30. As a member of a drug trafficking conspiracy spanning from New Jersey to North Carolina, Harper distributed large amounts of cocaine and heroin. See Sentencing Tr. [D.E. 169] 60–61. Harper also was a manager in the conspiracy and maintained a dwelling for the purpose of storing and selling narcotics. See id. at 61–63. Moreover, Harper is a violent recidivist with convictions for robbery; possession of weapons for unlawful purposes; unlawful possession of weapons – handguns; conspiracy to commit robbery; controlled dangerous substance on school property; possession of a controlled dangerous substance/analog Schedule I, II, or III; trafficking in opium or heroin (two counts); possession with intent to manufacture, sell, and deliver heroin; maintaining a vehicle, dwelling, or place for a controlled substance; possession of a controlled substance in prison or jail premises; and wandering or prowling to obtain or distribute a controlled dangerous substance. See PSR ¶¶ 34–38. Nonetheless, Harper has taken some positive steps while incarcerated. See [D.E. 192] 15–16; [D.E. 204] 23; [D.E. 209-1]; [D.E. 209-2].

The court has considered Harper's exposure to and recovery from COVID-19, his

7

vaccination status, his obesity, his rehabilitation efforts, his family circumstances, and his release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 2021 WL 1823289, at *4–7; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Having considered the entire record, the steps that the BOP has taken to address COVID-19 and to vaccinate Harper, the section 3553(a) factors, Harper's arguments, the government's persuasive response, and the need to punish Harper for his serious criminal behavior, to incapacitate Harper, to promote respect for the law, to deter others, and to protect society, the court declines to grant Harper's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); High, 2021 WL 1823289, at *4–7; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

As for Harper's request for home confinement, Harper seeks relief under the CARES Act. See [D.E. 204]. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). Thus, the court dismisses Harper's request for home confinement.

II.

In sum, the court DENIES Harper's motion for compassionate release [D.E. 192], and DISMISSES Harper's request for home confinement.

8

SO ORDERED. This 7 day of May 2021.

                                                               JAMES C. DEVER III
                                                               United States District Judge